IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No.   2:11-CV-62-D

| | |
|---|---|
| LAURA LANE BOSTILLO,            ) | |
| )                                 | |
| Plaintiff,           ) | |
| )                                 | **MEMORANDUM &** |
| v.                               ) | **RECOMMENDATION** |
| )                                 | |
| MICHAEL J. ASTRUE,            ) | |
| Commissioner of Social        ) | |
| Security,                          ) | |
| )                                 | |
| Defendant.        ) | |
| _____    ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-20 & 23). The time for filing any responses or replies has expired, and, therefore, these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-25) For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-20) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-23) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 29, 2009, alleging that she became unable to work on February 15, 2005. (Tr. 14). This application was denied initially and upon reconsideration. *Id.* A hearing

1

was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated March 25, 2011. *Id.* at 14-22. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on September 7, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on November 7, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

2

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 15, 2005. (Tr. 16). At step two, the ALJ found that Plaintiff had one severe impairment: degenerative disc disease of the lumbar spine with post-laminectomy and S1 radiculopathy. *Id.* at 16. However, the ALJ determined that this impairment was not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 18. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. *Id.* Specifically, the ALJ further limited the sedentary work Plaintiff could

3

perform by adding the following limitations:

> The claimant can occasionally climb, balance, stoop, kneel, crouch or crawl. Further, the claimant is limited to occasional pushing or pulling with her bilateral upper extremities. The claimant must also avoid concentrated exposure to dangerous moving machinery and unprotected heights.

*Id.*

The ALJ then determined, based on the testimony of a vocational expert ("VE"), that Plaintiff was capable of performing her past relevant work. *Id.* at 21. Accordingly, the ALJ determined that Plaintiff was not under a disability during the relevant time period. *Id.*

The undersigned has reviewed the entire record and finds that the ALJ's determinations were supported by substantial evidence, which shall now be summarized.

Following several examinations, Dr. Theodore Nicholas noted that: 1) Plaintiff was benefitting from medications without side effects or intolerances; 2) medication was providing Plaintiff improved function; and 3) Plaintiff was stable on her current regimen. *Id.* at 209-211, 213, 227-228, 237-238.

On May 15, 2008, Plaintiff's chronic pain was stable and she had "no new complaints." *Id.* at 213.

A September 10, 2009 MRI of Plaintiff's lumbar spine revealed left foraminal disc protrusion at L5-S1. *Id.* at 217. It was noted that "[t]his could be affecting the left L5 exiting nerve root and the left S1 traversing nerve." *Id.* There was also a mild bulge at L4-L5. *Id.* The neural foramina were unremarkable and the nerve roots appeared normal. *Id.*

Dr. Ran Vijai Singh examined Plaintiff on November 16, 2009. *Id.* at 215-216. Plaintiff had normal tone and strength in both upper and lower extremities. *Id.* at 216. He noted that Plaintiff had "not tried complete conservative treatment" and recommended that Plaintiff "try an

epidural." *Id.* It was also recommended that Plaintiff lose weight. *Id.*

Plaintiff underwent a comprehensive clinical psychological evaluation on December 4, 2009. *Id.* at 219. She reported that she had been working at a convenience store until June, 2009, when she was terminated after being accused of stealing. *Id.* Plaintiff had also applied for other jobs after her termination. *Id.*

During a January 21, 2010 examination Plaintiff stated that her medication was helping. *Id.* at 228.

On March 3, 2010 it was noted that Plaintiff was unable to lift objects weighing greater than 20 pounds. *Id.* at 226. She was also deemed incapable of repetitive bending and twisting at the lumbar spine. *Id.* It was observed that Plaintiff was having a fair response to medical management. *Id.*

Dr. Theodore observed on May 20, 2010 that Plaintiff was "doing 'ok'" on her current treatment regimen. *Id.* at 239.

Plaintiff indicated on March 10, 2011 that she had worked part-time from 2005-2009. *Id.* at 234. She had not worked at all since June, 2009, however. *Id.*

Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit. Nonetheless, Plaintiff's individual assignments of error shall now be addressed.

5

**Substantial evidence supports the ALJ's findings regarding Listing 1.04**

Plaintiff argues that the "ALJ . . . committed reversible error when [he] determined that [Plaintiff] did not have an impairment which met listed impairment 1.04." (DE-20-1, pg. 5). As noted above, this argument improperly requests the undersigned to re-weigh the evidence. Regardless, to meet or equal Listing 1.04, Plaintiff must show a disorder of the spine such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative-disc disease, facet arthritis, or a vertebral fracture — resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1(1.04). In addition, Plaintiff must also show at least one of the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.
>
> *Id.*

With regard to Listing 1.04, the ALJ determined:

> The claimant does not have symptoms or signs of a nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required for degenerative disc disease to meet Listing 1.04. The claimant's condition is not manifested by other clinical findings indicating a level of severity comparable to the criteria of the relevant Listing and, therefore, her condition does not medically equal the Listing 1.04 criteria.

6

(Tr. 18).

These findings were supported by substantial evidence, which has already been summarized. Accordingly, this assignment of error is without merit.

**The ALJ properly evaluated the opinion of Dr. Nicholas**

Plaintiff next argues that the ALJ erred in assessing the weight to be given to the opinions of Dr. Nicholas. (DE-20-1, pg. 13). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(unpublished opinion)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id.* (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged

7

up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 1999 WL 7864, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also*, Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also*, Farrior v. Astrue, 2011 WL 3157173, * 4 (E.D.N.C. June 1, 2011).

Here, Dr. Nicholas stated on May 20, 2010 that Plaintiff was incapable of standing, walking or sitting "for any length of time." (Tr. 230). He also indicated that Plaintiff could not perform repetitive bending or squatting. *Id.* It was noted that Plaintiff's condition had "not improved at all over the course of time" and that he did "not expect any significant improvement in the future." *Id.* Based on these findings, Dr. Nicholas opined that Plaintiff was "unemployable, and would be considered totally and permanently disabled." *Id.* On February 17, 2011, Dr. Nicholas reiterated that he did not believe Plaintiff could work. *Id.* at 236.

Dr. Nicholas' statement is inconsistent on its face to the extent it states-with little clarification-that Plaintiff cannot stand, walk or sit "for any length of time." Regardless, the ALJ

8

made the following findings with regard to Dr. Nicholas' opinion:

> As for the opinion evidence, the following specific factors are considered when weighing medical opinions: 1) *examining relationship* - is the medical opinion the product of a physician's examination or is it the product of a medical evidence review; 2) *treatment relationship* - is the medical opinion the product of an ongoing, treating relationship between a physician and patient; *3) supportability* - is the medical opinion supported by relevant evidence such as medical signs and laboratory findings; 4) *consistency* - is the medical opinion consistent with the medical record as a whole; and 5) *specialization* - is the medical opinion produced by a physician within his or her area of specialty (20 CFR 404. 1527(d)(1-5) and 416.927(d)(1-5)).
>
> In this case, the undersigned accorded limited weight to Dr. Nicholas's opinion that the claimant is "totally and permanently disabled" and therefore "unemployable" (Exhibit 6F, p. 2; Exhibit 8F, p. 2). In Dr. Nicholas's letter dated May 20,2010, he wrote that the claimant "cannot stand, walk, or sit for any length of time, nor can she perform repetitive bending or squatting without aggravating her pain [symptomatology]" (Exhibit 6F, p. 2). In this case, given that the claimant's residual functional capacity limits her to sedentary work, the key question is whether the claimant has the ability to perform a job that requires the ability to sit for up to six hours in an eight-hour workday. In this case, the undersigned finds that the claimant's past work history suggests that she retains to the ability to perform sedentary work at substantial gainful activity levels. During a December 4, 2009 consultative examination with Dr. Richard Bing, the claimant informed Dr. Bing that she worked as a clerk at a convenience store through June 2009 until she was terminated because she was accused of stealing (Exhibit 3F, p. 2). She further indicated that since June 2009, she had submitted at least two applications for other jobs (Id.). The claimant's revelations to Dr. Bing show that the claimant's back impairment is not the underlying reason why the claimant is no longer working. Additionally, the fact that she has applied for other jobs since then suggests that the claimant's vocational limitations are less than alleged. For these reasons, the undersigned finds Dr. Nicholas's opinion that the claimant is "permanently disabled" and "unemployable" inconsistent with the substantive record as a whole. The undersigned also notes that the determination of whether a claimant is disabled or employable is an administrative finding reserved to the Commissioner. SSR 96-5p.
>
> *Id.* at 20.

These findings were supported by substantial evidence, and, therefore, this assignment of error is

without merit.

**<u>The ALJ presented a proper hypothetical to the VE</u>**

Plaintiff also argues that the ALJ "failed to properly assess . . . [Plaintiff's] symptoms and credibility." (DE-20-1, pg. 15). In turn, Plaintiff argues, this failure resulted in the ALJ presenting the VE with an improper hypothetical question.

During the hearing in this matter, Plaintiff testified that she was able to drive. (Tr. 28). She noted that she was currently home-schooling her son. *Id.* at 29. Plaintiff testified that she stopped working because of problems with her lower back, left leg and foot. *Id.* at 29-30. Her back pain was constant and radiated down her left leg. *Id.* at 30. She noted that it was uncomfortable for her to sit or stand for longer than approximately 15 minutes at a time. *Id.* at 34-35. Plaintiff opined that she could lift 10 to 15 pounds without pain, although she would not be able to carry that weight. *Id.* at 35. In addition, Plaintiff indicated that a doctor "suggested" she use a cane in 2002. *Id.* at 30. Furthermore, Plaintiff noted that she had difficulty reaching her back while bathing herself. *Id.* at 32. She also alleged difficulty leaning over to tie her shoes. *Id.* However, Plaintiff was capable of performing some light housework. *Id.* Likewise, Plaintiff indicated that she was capable of buying her own groceries. *Id.* Plaintiff testified that her symptoms were not fully relieved by her prescribed medications. *Id.* at 33. Ultimately, the ALJ found that Plaintiff's statements were not completely credible, and his reasons for so finding were supported by substantial evidence which has already been summarized.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Furthermore, an ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so

long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 1999 WL 7864, * 5 (4th Jan. 11, 1999)(unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. March 13, 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. (Tr. 18, 37-40). This assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-20) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-23) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, October 17, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE